UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff, | ) | |
| v. | ) | No.: 3:21-CR-8-TAV-JEM-1 |
| WILLIAM BRIAN CAIN,<br><br>Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendant's pro se motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1) [Doc. 99]. The Federal Defender Services of Eastern Tennessee has filed a notice of no intent to supplement the pro se motion [Doc. 102]. The government has responded in opposition [Doc. 103]. For the reasons set forth more fully below, defendant's motion for compassionate release [Doc. 99] will be **DENIED**.

## I. Background

On January 13, 2022, defendant pled guilty to distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) [Docs. 46, 49]. On May 19, 2022, the Court sentenced defendant to 210 months' imprisonment, to be followed by 15 years of supervised release [Doc. 78]. According to the Bureau of Prisons' website, defendant is presently scheduled for release on August 8, 2036. Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/ (accessed Oct. 27, 2026).

## II. Standard of Review

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. Defendant seeks relief under § 3582(c)(1)(A)(i) [Doc. 99].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

## III. Analysis

### A. Exhaustion

The Court first examines whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct.

13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

In this case, the government concedes that the exhaustion requirement has been satisfied [Doc. 103, p. 3]. Accordingly, the Court will proceed to evaluate defendant's compassionate release request according to the three-step test explained above.

**B. Section 3553(a) Factors**

Ultimately, the § 3553(a) factors weigh against granting compassionate release, and therefore, the Court declines to address whether defendant has established extraordinary and compelling grounds for release. *See Elias*, 984 F.3d at 519.

Section "3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). 18 U.S.C. § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. *Id.*

The Court has considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education and training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). Further, the Court has considered the kinds of sentences available, the guideline sentencing range, and the need to avoid unwarranted disparities. *Id.*

In finding that the § 3553(a) factors, and particularly, the nature and circumstances of this offense and the history and characteristics of the defendant, weigh against granting compassionate release, the Court begins with the criminal conduct in this case. The revised presentence investigation report ("PSR") states:

> On May 29, 2020, Homeland Security Investigations/Internet Crimes Against Children HSI/ICAC Knoxville began an online undercover investigation on the BitTorrent P2P file sharing network to locate people illegally sharing child pornography (CP). On that day, an undercover officer (UC) located a computer in Tennessee using the IP address 67.187.116.239 associated with possessing files of child pornography (CP).
>
> Through American Registry for Internet Numbers, IP address 67.187.116.239 was determined to be registered with Comcast Communications LLC (Comcast). A subpoena was set to Comcast for subscriber information which came back to the defendant and his home residence . . . in Knoxville in the Eastern District of Tennessee. Law enforcement confirmed the defendant did in fact live in the home.
>
> On the first day of the undercover investigation, the UC received from IP address 67.187.116.239, belonging to the defendant, a file 8 minutes in length depicting multiple minors being sexually abused. During the entire undercover investigation between March 3, 2020, and October 31, 2020, the defendant knowingly distributed 239 images and 116 videos of CP . . . to the UC using the IP address 67.187.116.239.
>
> On November 5, 2020, a federal search warrant (SW) was obtained for the defendant's home . . . . The SW was executed the next day. Upon entering the

> home, the defendant had CP . . . on his Dell Inspiron laptop screen. Defendant's BitTorrent program was actively running and in the process of receiving CP.
>
> The Dell Inspiron laptop was seized and a forensic examination was performed. Multiple software programs were installed on the laptop to search for, locate, receive, and distribute files of CP, including: Bitcomet, qBittorrent, uTorrent and eMule. Bitcomet was the primary application that the defendant had used. From February 2, 2020 through August 8, 2020, within the Eastern District of Tennessee, the defendant knowingly received CP . . . from the BitcomentDownloads.xml log file totaling seven hundred (700) images ant two hundred and forty-one (241) videos of CP and the defendant knew that these images and videos contained CP.
>
> On December 23, 2020, defendant executed a surety bond in the amount of $180,000.00 using his residence . . . and his parent's home . . . as collateral . . . . Defendant was placed on home confinement pending trial with an ankle monitor with special conditions.
>
> On August 15, 2021, the neighbors of the defendant observed the defendant and his father loading the father's truck with the defendant's possessions. On August 16, 2021, federal probation was notified that the ankle monitor that the defendant had been wearing as part of his home confinement indicated that the defendant had tampered with the ankle monitor. Probation went to the defendant's home but could not locate the defendant and obtained an arrest warrant for the defendant.
>
> The United States Marshals (Marshals) went to the home of the defendant's parents to locate the defendant. The defendant's parents reluctantly gave consent to search the home after telling the Marshals they were unaware of the defendant's whereabouts. Marshals located the defendant hiding in his parents' basement, crouched inside a large box.

[PSR ¶¶ 17–24]. The PSR also contained several other disturbing facts, including that, upon executing the search warrant, officers found "two dildos on [defendant's] desk, and a towel on the seat of his desk chair that had a trail of smeared feces on it" as well as "a duffel bag that contained six dildos" and "a dildo on his bathroom floor" and "pill bottles that contained medication that was not prescribed in the defendant's name" [*Id.* ¶¶ 25–26].



Case 3:21-cr-00008-TAV-JEM Document 104 Filed 11/02/26 Page 6 of 8 PageID #: 1134

Regarding the content of the child pornography located on defendant's laptop, the PSR states that "[t]he majority of the images were of females and included females as young as infants and up to teenage years" [*Id.* ¶ 27]. Several images "consisted of closeup images of someone's hands spreading toddlers' vaginas open" [*Id.* ¶ 28]. Another video

> was between 10 and 30 minutes long and showed a completely nude female who appeared to be approximately seven years old. The video showed the child with her wrists duct taped to her legs while a male smacked her vagina with his hand and inserted his penis into her vagina. He raped her for at least 10 continuous minutes. This was recorded by someone as another individual sat on the bed and took pictures. As the child was being raped, two other girls were sitting on the bed watching. These girls appeared to be approximately seven years old and one was fully nude. Once the perpetrator removed his penis, he continued to insert dildos and other sex devices into her vagina.

[*Id.* ¶ 29]. Yet another video

> was approximately eight minutes in length. The video is a compilation of female infants and toddlers being sexually assaulted. One scene shows a female who appears to be approximately six months old. The child is laying on her back while an adult male masturbates and ejaculates on her vagina. Another scene shows a toddler standing and bent over as a male inserted his penis into her vagina and raped her. The video compilation includes numerous female infants being ejaculated on, close ups of infants' vaginas, and men penetrating infants with their penis

[*Id.* ¶ 30]. Needless to say, the Court finds this offense conduct to be particularly serious and egregious, and further, finds that defendant presents a danger to the public based on his prior conduct.

The Court also finds defendant's obstructive conduct after his arrest, inclusive of removing his ankle location monitoring device and utilizing his elderly parents' home to hide from law enforcement, to be troubling. This conduct emphasizes the need in this case for adequate deterrence and to protect the public from future crimes of defendant.

Finally, the Court notes that defendant has served only approximately 63 months of his total 210-month sentence [Doc. 103-1]. The Sixth Circuit has ruled that courts may consider the amount of time a defendant has served when ruling on a motion for compassionate release. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this instance, defendant has served only a fraction of his 210-month sentence, and he still has a significant amount of time left to serve. The Court finds that the length of time left on defendant's sentence is another factor that weighs against compassionate release.

Ultimately, in reaching its decision, the Court has considered the parties' filings, the PSR, the § 3553(a) factors and other relevant law, and the record as a whole. On the record before the Court, the § 3553(a) factors weigh against early release, and defendant's motion for compassionate release [Doc. 99] is hereby **DENIED**.

## IV. Conclusion

For the reasons set forth more fully above, defendant's motion for compassionate release [Doc. 99] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE